**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**RALPH SANDERS**                                                                                          **PLAINTIFF**

**VS.**                                     **CIVIL ACTION NO.: 3:13CV906LRA**

**KEMPER COUNTY and
SHERIFF JAMES MOORE**                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Defendants' Motion for Summary Judgment [55] and the Plaintiff's Motion for Summary Judgment [58]. For the reasons more fully set out below, the Court is of the opinion that the Plaintiff's Motion should be denied, and the Defendants' Motion should be granted in part and denied in part.

## FACTS

On December 29, 2010, officers from the Mississippi Bureau of Narcotics and the Kemper County Sheriff's Department found Ralph Sanders sitting in his car on Highway 21 in Preston, which is located in Kemper County, Mississippi. According to Kemper County Sheriff James Moore, MBN Officer Lt. Kevin Gregory informed Moore that Gregory had a warrant to arrest Sanders for the sale of crack cocaine. The officers pulled over and asked Sanders to get out of his car. Sheriff Moore says that Officer Gregory then arrested Sanders on the outstanding warrant, and an MBN officer and some Kemper County deputies searched Sanders's car. They found marijuana in the car, and Sanders was also charged with possession of marijuana. Sanders has admitted that neither Gregory nor Sheriff Moore was directly involved in the search; they were questioning Sanders about drug sales in the area while the search was occurring. After his arrest, Sanders was transported to the Kemper/Neshoba Regional Correctional Facility.

Sanders allegedly sold crack cocaine to an undercover agent on September 10, 2010, but a warrant for his arrest for that crime was not issued until December 29, 2010, which is the day that his car was searched. The affidavit supporting the warrant was sworn to by Lt. Gregory. The affidavit states that the sale took place on Highway 21 in Preston, which is in Kemper County, and it is the same location in which Sanders was found on the day of his arrest.

According to Sanders, no one showed him a warrant at the time that he was arrested or served a warrant on him. He testified, both at a hearing before this Court and at his deposition, that, after he was taken to jail, one officer asked another, "What do we charge him with?" The officer responded that he would be charged with sale of crack cocaine and possession of marijuana. The warrants for the September sale of cocaine and possession of the marijuana found in his car were issued on the same date, and both warrants show that they were served on December 30. This is consistent with Sanders's testimony that Officer Gregory served both warrants on him in jail on the day after his arrest.

Sanders's initial appearance was held in the Justice Court of Kemper County on January 4, 2011, for the charge of sale of cocaine. His bond was set at $25,000.00 and he was appointed counsel for that charge. The documents related to that appearance indicate that the charges were filed by Officer Gregory, but they do not mention the charge for possession of marijuana. Sanders remained in the Correctional Facility on those charges from December 29, 2010, until March 2, 2011, when he was released on a recognizance bond. Sanders says that he came to court on two occasions after his release, but his case was not called. According to him, he checked with a court employee to see whether his case was on the docket for the next court date, and she told him that

it was not.  In any event, the parties agree that he failed to appear on that date, and he was charged with contempt of court in October, 2011.

Sanders was indicted for the crime of sale of cocaine on October 11, 2011.  On October 18, 2011, a bench warrant was issued that stated that Sanders was "charged with the crime of Sale of Cocaine in Kemper County, for failure to appear pursuant to condition of appearance bond . . . ." The warrant does not mention the possession of marijuana charge.  On January 4, 2012, a Kemper County Circuit Judge signed an agreed order cancelling the bench warrant, prepared by the District Attorney and defense counsel.  On May 1, the court entered an "Order of Nolle Prosequi," which stated that the State had moved for the order "due to video showing a 3rd party actually making the sale and no information as to who this witness/defendant is or why he was not charged . . . ."  There is no indication in the record before the Court as to the disposition of the marijuana possession charge.

Sanders filed this lawsuit on November 29, 2011, alleging the following facts as relevant to his claim of a deprivation of his constitutional rights:

> Charge with sale of cocaine Dec. 29, 2010, follow order of meeting court date May 3, 2011 name wasn't called.  Court or appointed attorney told me nothing return next term; July 2011, 3/days name wasn't called and no return date again Oct, 2011 next term called and my name wasn't on court docket Oct 10, 2011. 4 days later Oct. 14, 2011 arrested at my job for failure to appear (287) days later with a warrant and indictment that do not carry seals and likewise my understanding is the limit to indict is 3-quarter of a year (275) days or 6 months 180 days.  This is over 285 days.  I never heard of such.  The indictment nor bench warrant have a seal on them.  78 more days would be a (1) year.  The limit to issue Indictment had expired.

Sanders asked for the following relief, "That the court prepare documents correctly, in a timely manner. Make-up for loss of job, pain and trouble at their jail.  (1) million dollars for all stress, loss

of family time and holidays and lost wages." At a hearing before this Court, Sanders said that his primary claim was false arrest, although he also mentioned illegal search and seizure.

## ANALYSIS

The Defendants have moved for summary judgment on grounds that Sheriff Moore is entitled to qualified immunity and that Sanders has not enunciated a constitutional claim against Kemper County. They argue that there is no constitutional claim against Sheriff Moore because the arrests were made pursuant to valid arrest warrants. They also argue that there can be no constitutional violation related to the search because it was incident to the arrest on the charge of selling crack cocaine. Moreover, they argue, Sanders cannot make out a claim against the Sheriff for failure to timely indict him, as Moore was not responsible for indicting Sanders. With regard to Kemper County, the Defendants argue that no constitutional claim has been alleged, and, even if it had been, Sanders has not established a policy, practice, or custom of the County that caused the violation.

When asked at his hearing why he had sued Sheriff Moore, Sanders testified as follows:

> A. Well, one thing, he wouldn't come back and try to undo after he did what he done. I mean, he said at the end, it was him and all these guys, he allowing all these men in my car.
>
> Q. Was he present at the start?
>
> A. He was there. And actually he was standing further – me and him was standing further than me and you apart now, where I pulled vehicles with my car. And I said, They better put my stuff back in my car. I'm standing over at 20 feet from my car, and these people running in and out my car as big as this table. It's not as big as the inside of this table.

Later, Sanders was asked whether Sheriff Moore searched his vehicle, and he responded, "As an officer – he's the sheriff. He's in charge of the county, I would think."

During his deposition, defense counsel asked Sanders if he knew who had filed the charges against him. Sanders replied:

> A. I have no idea. All I know, in my best opinion, every county got a sheriff and the sheriff's supposed to run the county. So if the sheriff is there standing with whoever else that's doing whatever he's supposed to know what in charge. I mean, these guys – whether they federal guys or whatever – and I know when they come in these little counties, the first person they need to check with is the sheriff before they start doing anything. So, I mean, if they all in one clique when they – when they come and see you, it's everybody involved, you know.

Defense counsel followed up his question:

> Q. So you think – you think if MBN was the one that arrested you, you think Sheriff Moore should have stopped them from doing it?
>
> A. Well, I think Sheriff Moore or the MBN should have knowed [sic] what they were talking about when they arrest someone, you know. You just don't go arrest someone, say, " I want to get you for robbing a bank," and come to find out, "No, it was a fellow that was a little bit shorter than you that robbed the bank and looked almost like you, and we don't know who he is." You know, that that – that that ain't making good sense.
>
> Q. If – if it was MBN, what should have – what should Sheriff Moore have done?
>
> A. Well, like I say, he's the person in charge.

Sheriff Moore claims that he is protected from liability by the doctrine of qualified immunity, and he has moved for summary judgment on that basis. When a qualified immunity defense is raised at the summary judgment stage, the usual burden of proof is altered. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff must then rebut the defense. *Id*. "[T]he court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [test for qualified immunity]." *Miles v. Rich*, No. 13-40427, 2014 WL 3748298 at *1 (5th Cir. July 31, 2014) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). To find that the plaintiff has overcome the qualified immunity defense, "the court must highlight evidence that, if interpreted in the light most favorable

to the plaintiffs, identifies conduct by the defendant that violated clearly established law." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004). If the court denies the motion for summary judgment, it should outline "'the factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable" to the plaintiff' and 'highlight the evidence in the record supporting its conclusions.'" *Miles*, at *1 (quoting *Castillo*, 369 F.3d at 507).

The Court agrees with the Defendants' argument that Sanders has not stated a claim with regard to the time between his arrest and indictment. As the Defendants point out, Miss. Code Ann. §25-31-11(1) gives the district attorney the authority to instigate and prosecute criminal cases, and to represent the State before the grand jury. Vicarious liability is inapplicable in a lawsuit under § 1983; liability can only be predicated on the individual actions of the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Sheriff Moore, therefore, cannot be held liable for any delay, nor would the delay in this case give rise to liability. Defendants correctly argue that, to the extent Sanders may be arguing a right to a speedy trial, either under the Fourth Amendment or state law, that right measures the time between indictment and trial. *Barker v. Wingo*, 407 U.S. 514, 533 (1972); *Smith v. State*, 550 So. 2d 406, 408 (Miss. 2006). Pre-indictment delay, however, can also require dismissal if it "caused actual prejudice to the defendant and . . . was an intentional device used by the government to obtain a tactical advantage over the accused." *Hooker v. State*, 516 So. 2d 1349, 1351 (Miss. 1987). Because Sanders has not presented any facts to show that he satisfies this test, he cannot prevail on a claim of pre-indictment delay against Sheriff Moore, and the district attorney, in any event, would have been absolutely immune from suit under § 1983. *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463 (5th Cir. 1998).

The claims related to Sanders's arrest and the search of his car are more problematic, as the defense to those claims rests largely on the argument that, prior to the arrest and search on December 29, 2010, Officer Gregory had a valid warrant for Sanders's arrest for selling crack cocaine. The Defendants argue, therefore, that because Gregory had a warrant for Sanders's arrest on drug charges, he was entitled to search Sanders's car for evidence of drugs. The Supreme Court has held, "Police may search a vehicle incident to a recent occupant's arrest . . . if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). *See also U.S. v. Gray*, 544 F. App'x 870, 884 (11th Cir. 2013) *(*"[S]ince an MGPD detective had probable cause to arrest [the defendant] for possession of cocaine, the search of the vehicle was also permissible because it reasonably could have yielded further evidence of drug crimes." According to this argument, once officers found marijuana in Sanders's car, Gregory could then arrest him on that additional charge.

The difficulty with this argument is that Sanders disputes the facts on which it is based, and he says that no warrant was served on him until the day after his arrest and the search of his car. The documents themselves appear to support Sanders's story. As stated earlier, both arrest warrants were obtained on December 29, the date of the vehicle search and arrest, and both warrants show that they were served the next day. Sanders's argument, then, is that, since there was no existing warrant for his arrest on the charge of sale of cocaine, his December 29 arrest on that charge was illegal. Moreover, absent a warrant, and there being no showing of probable cause to believe that he possessed drugs on December 29, the search of his car was illegal. Since his arrest on marijuana charges was based on the illegal search of his car, that arrest was also illegal.

7

Sheriff Moore argues that, even if the arrest or the search were to be held invalid, the fact that warrants were issued breaks the chain of causation and insulates him from liability. *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988). In *Hand*, the court held that, where the facts supporting an arrest warrant are put before an impartial magistrate, even where the officer acts with malice in procuring the warrant, the chain of causation is broken. Although *Hand* has never been overruled, its conclusion appears to be inconsistent with the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335 (1986). In any event, the Court does not find that *Hand* is controlling in this case. First of all, the court went on to hold, "[T]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." 838 F.2d at 1428. Any omission or commission in relating those facts "perpetuates the taint of the original official behavior."

Here, the affidavit supporting the cocaine charge says that Sanders "did unlawfully, knowingly, and feloniously sell a controlled substance, to with: crack cocaine, to an undercover operative while located at 3233 Highway 21, Preston, Kemper County, Mississippi . . . ." This is a conclusory statement that gives no information regarding how Gregory came by this information. On the basis of this affidavit, the Court cannot determine the veracity or the basis of knowledge of the information giving rise to the conclusion that Sanders was selling crack cocaine. *See Garvis v. State*, 483 So. 2d 312, 315 (Miss. 1986) ("Affidavits containing specific, facially credible details regarding a suspect and alleged contraband are entitled to greater weight in probable cause determinations than those employing vague, generally [sic] or merely conclusory language."); *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983). The lack of specificity in the affidavit, coupled with the

language in the Order of Nolle Prosequi reciting that the case cannot be prosecuted "due to video showing a 3rd party actually making the sale and no information as to who this witness/defendant is or why he was not charged," makes it questionable whether the official issuing the warrant was actually apprised of all of the facts surrounding the charge. Also arguing against the use of *Hand* is the fact that, by its language, it applies to a charge of illegal arrest. There is no indication that it should also be applied to an allegedly illegal search undertaken before the arrest warrant was actually procured.

Finally, Sheriff Moore argues that, whatever circumstances surrounded the search and arrest, he acted reasonably under the circumstances. He argues that he was entitled to rely on Officer Gregory's representation that he had a valid arrest warrant in order to search Sanders's car. As he admits in his affidavit, Moore was serving as the elected Sheriff of Kemper County at the time of the search and arrest. There is no indication that he was serving under the authority of Officer Gregory, only that he was working with him to investigate narcotics violations in the county. The fact that he did not actively participate in the search of Sanders's vehicle does not insulate him from liability, as his deputies did participate. Moreover, as the Fifth Circuit has recognized, law enforcement officers who lead a search "are responsible for ensuring that they have lawful authority for their actions." *Hunt v. Tomplait*, 301 F. App'x 355, 360 (5th Cir. 2008). In *Hunt*, the Fifth Circuit, relying on a case out of the Ninth Circuit, held that a deputy who lead a search team that entered the wrong residence could not rely on the fact that he did not personally enter the house to argue that he was immune from suit. *Id*. at 360-61 (citing *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1027 (9th Cir. 2002). Similarly, Sheriff Moore is not entitled to summary judgment on

the argument that he did not participate in the search, as he was the leader of the team of deputies that did.

The Court does, however, agree with the Defendants that, to the extent Sanders is suing Sheriff Moore in his official capacity, his claims must fail, as do his claims against Kemper County. A lawsuit against the Sheriff in his official capacity is just another way of suing the county. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Sanders cannot recover in his claims against Sheriff Moore or Kemper County unless he shows that a "policy or custom" of the county played a part in the violation of his constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-091 (1978). Sanders has neither pleaded nor proved such a policy or custom. For that reason, the Defendants' Motion for Summary Judgment as to these claims should be granted.

Fed. R. Civ. P. 56(a) provides for the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Based on this standard, the Court is of the opinion that there are genuine disputes as to issues of material fact in this case that preclude the entry of summary judgment for the Defendants on Sanders's claims of illegal arrest and illegal search and seizure. The Court has also reviewed Sanders's Motion for Summary Judgment, in which he seeks judgment in his favor based on his arrest and the search of his car. Because the Court is of the opinion that there are fact questions remaining that must be resolved before a finding that either his arrest or the search of his car were actually illegal, Sanders's Motion will be denied.

IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment [55] is hereby **granted** to the extent that Sanders's claims related to the time period between his arrest and

indictment, his claims against Sheriff James Moore in his official capacity, and his claims against Kemper. The Motion is **denied** with respect to the claims against Sheriff Moore related to Sanders's arrest and the search of his vehicle on December 29, 2010. The Plaintiff's Motion for Summary Judgment [58] is hereby **denied**.

IT IS FURTHER ORDERED that Sanders' Motion for Judgment [51], Motion for Contempt of Court [57], and Motions to Enforce [61 & 62] are **denied.** His Motion Requesting Trial [60] is **granted** to the extent set forth herein, and the Court will schedule a hearing in the near future.

IT IS SO ORDERED AND ADJUDGED this the 15th day of September, 2014.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE